## 38557.   UNION CENTRAL LIFE INSURANCE COMPANY v. COFER.

Decided February 20, 1961—Rehearing denied March 16, 1961.

*Martin, Snow, Grant & Napier, T. Baldwin Martin,* for plaintiff in error.

*Bloch, Hall, Groover & Hawkins,* contra.

NICHOLS, Judge. ■ The present case was brought under the double indemnity or accidental death agreement of the policy of insurance which provides:

"2. Accidental death. The amount of benefits payable upon the death of any person (hereinafter referred to as the insured) whose life is insured under this policy will be increased by the amount provided in Article 4 of this agreement if such death occurs under the following conditions: (a) Death must result directly, independently and exclusively of all other causes from

bodily injury effected solely through accidental and violent means. (b) Such injury must be evidenced by a visible contusion or wound on the exterior of the body except in the case of drowning or internal injury revealed by an autopsy. (c) Such death must occur within ninety days after the date of any such injury."

"5. Risks not assumed: Accidental death or dismemberment is not a risk assumed in this agreement if it results directly, or indirectly (a) from war, riot or insurrection or any act incident thereto, or from service in the military, naval or air forces of any country, combination of countries, or international organization at war, whether declared or undeclared, or (b) from travel or flight in any military or naval aircraft while the insured is in the military, naval or air forces of any country, combination of countries or international organization, or from travel or flight in any other kind of aircraft while he is a pilot, officer, or member of the crew of such aircraft, or while he is in any aircraft operated for aviation training, or (c) from any bodily or mental disease or infirmity or from any infection other than infection occurring simultaneously with and in consequence of a wound caused by accidental, external and violent means, or (d) from any kind of poisoning or from the voluntary or involuntary inhalation of any kind of gas, or (e) *from commission of an assault or felony by the insured*, [Italics ours] or (f) from suicide while sane or insane, or (g) from injuries intentionally inflicted by the insured upon himself."

Special grounds 1 and 6 of defendant's amended motion for new trial assign error upon certain excerpts from the charge to the jury wherein the jury, in the excerpt of the charge which is assigned as error in special ground 1, was instructed, as a matter of law, that the plaintiff had carried the burden of establishing, by a preponderance of the evidence the fact that the plaintiff's husband's death "resulted directly, independently and exclusively of all other causes from bodily injury effected solely through accidental, external and violent means. . ." The defendant contends that such charge was erroneous and injurious because the pleadings and evidence in the case created an is-

sue of fact to be determined by the jury as to whether the plaintiff's husband met his death by accidental means, or whether his death was caused by his voluntary consumption of an excessive amount of alcoholic beverages which rendered him mentally and physically incapable of driving his automobile and thereby resulted in his death. With this contention we cannot agree. In the first place the defendant here admitted that the death of the plaintiff's husband was not suicidal, that the death of the insured Cofer resulted directly, independently and exclusively of all other causes from bodily injury which injury was evidenced by visible contusion or wound on the exterior of the body of Cofer. These two admissions standing alone practically, if not completely eliminated any question but that Cofer met his death by accident or accidental means, but with the additional testimony of the plaintiff that her husband, on occasions, had trouble with his back so severe that he had to have treatment from a neurologist or neurosurgeon; that the car in which her husband was riding at the time of his death had been purchased "second hand" and that he had put approximately 60,000 miles on it since he had it; that the car, while he was in Macon, was used as a family car and that on occasions the children would leave soft drink bottles in the car; that at the time of his death Mr. Cofer was en route to Macon, Georgia, to attend a "called" meeting of the salesmen of his employer, which was to be held on the night that he met his death. And the testimony of Robbie F. Johnson, the only eyewitness to the actions of Cofer, the deceased, both prior to and at the time of the fatal accident to the effect that he detected nothing unusual in the way and manner Cofer was driving his automobile except that he thought he was driving a little too close to him; that Cofer's car was immediately behind him and had followed him for approximately two miles prior to the collision; that on one occasion Cofer had tried to pass him but had to fall back into line due to an oncoming car; that Cofer was properly staying in his lane of travel and that he did not see any weaving of the car or anything of that sort. This evidence, coupled with certain correspondence of defendant (two letters and a memorandum opinion from the defendant relative to the plaintiff's claim) intro-

duced in evidence as plaintiff's exhibit 3, disclosing that the defendant's investigation into the death of Mr. Cofer was at most, from the defendant's standpoint, inconclusive with reference to the drunkenness of the plaintiff's husband, together with the death certificate showing death to be the result of accident, and buttressed further by the very pertinent fact that the insurance policy at issue does not contain exclusion clauses for either: (1) while intoxicated or with the presence of intoxicants within the body; (2) for violation of law; (3) for negligence; (4) for assumption of risk, was sufficient evidence to make out a prima facie case of death by accident or accidental means. *Code Ann.* § 88-1118; *Prudential Ins. Co. v. Kellar*, 213 Ga. 453 (99 S. E. 2d 823). The mere fact that the plaintiff's deceased husband, under the evidence, had consumed at least four ounces of intoxicating beverage, and was at the time of the collision under its influence, would not constitute, per se, a bar to recovery in the absence of an exclusionary clause in the policy to cover such circumstance. While it is true that the deceased husband of the plaintiff was exposing himself to danger when driving the car under the influence of any quantity of intoxicants, yet, "voluntary exposure to danger by the holder of an accident insurance policy will not defeat recovery for an injury caused by accidental means, where such exposure is not an exception in the policy, and the insured has no intention of producing the injury received." 29A Am. Jur. 320, § 1174; *Life & Cas. Ins. Co. of Tenn. v. Benion*, 82 Ga. App. 571 (61 S. E. 2d 579). Nor does the fact that the speed of the automobile was in violation of law affect the coverage of the policy, in the absence of an exception to that effect. The same is true as to negligence, as has been so held by this court, speaking through Chief Judge Felton in the *Benion* case, supra. See also 29A Am. Jur. 306, § 1160, wherein it is stated: "recovery on an accident insurance policy is not defeated by the mere fact that negligence of the insured contributed to the injury." Accordingly, the trial court did not err in instructing the jury that the plaintiff had carried the burden of establishing the fact that the plaintiff's husband met his death through accidental, external and violent means, as complained of in special ground 1.

The plaintiff having made out a prima facie case of death by accident, or accidental means, the burden then shifted to the defendant to show that the plaintiff was barred, or precluded from recovery, under the provisions of the policy known as "Exclusion of risk" provision, appearing in the policy as paragraph 5-E, and under the heading "indemnity for death or dismemberment by accidental means" by proving its affirmative defense, by a preponderance of the evidence, as set out in paragraph 10 of defendant's answer, as follows: "at the time and place of the collision between the automobile driven by Cofer and Oscar Eugene Marin, the said Cofer committed an assault and felony in that while driving at a rate of speed greater than allowed by law, on the left-hand side of the road, while under the influence of intoxicating liquor with reckless disregard for human life, he killed Oscar E. Marin and Mrs. Frances R. Foss, who were riding in the automobile with which he collided." The jury in returning a verdict in favor of the plaintiff obviously did not think the defendant had carried this burden as required by law. We think the jury's verdict, under the evidence in this case, was authorized. In fact we think the trial court, under the evidence here, would have been authorized to resolve, as a matter of law, that Mr. Cofer's death did not result "from commission of assault or felony" as contemplated by the policy. We are of the opinion that the words "assault or felony" as used in the policy sub judice refer not to a simple or technical assault or felony, but to such an assault or felony as would have justified the victims of such assault or felony in taking the life of the insured for committing same; in other words we think both the words "assault or felony" contemplate and carry with them a specific intent, and not merely an imputed intent, on the part of the insured. *Riggins v. Equitable Life Assurance Society,* 64 Ga. App. 834 (14 S. E. 2d 182).

The excerpt from the trial court's charge to the jury, assigned as error in special ground 6, is as follows: "I charge you in connection, gentlemen, with all of these instructions that I have given you upon the subject matter of assault and upon the subject matter of felony as follows: I charge you that even though you should find that the insured Mr. Cofer, and in the occur-

rence that resulted in his death, was negligent, was under the influence of intoxicants, or was violating the law, neither of these factors alone, singly, or in any combination would justify you in returning a verdict for the defendant in this case. I have allowed your consideration of such questions singly, or in any combination only as factors in your consideration of the question whether, as contended by the defendant, the insurance company, the death of Mr. Cofer resulted from commission of an assault or felony by him."

The defendant contends that this charge was erroneous and injurious because it was misleading, confusing and argumentative. Taken alone, and out of context, this excerpt from the charge might be subject to such criticisms, but, when the charge is considered as a whole, as under numerous decisions of this and the Supreme Court it must be, and the record revealing as it does in this case, that just prior to delivering this particular portion of the charge, the trial court had instructed the jury exhaustively on the law of assault, felony, manslaughter, involuntary manslaughter, and all vehicular traffic laws and regulations involved in the case, and then concluded this particular portion of the charge with the correct and applicable principles of law, as follows: "In other words, gentlemen, in order that the defendant be absolved from liability it must appear not only that the insured was in the commission of an assault or felony, as charged by the defendant and as the court has defined that to you, but also that the said assault or felony had some causative connection· with the insured's death, or that the insured's death was a reasonable and natural consequence of the commission of such assault or felony." Accordingly, there is no merit in special ground 6, and the trial court did not err for the reason assigned.

■ Special grounds 2, 3, 4, 5 and 7 each assign error on the trial court's refusal to charge certain written requests. Although in each instance the request so urged was correct, as an abstract principle of law, in neither instance was it harmful error to fail to so charge, because either the subject matter in each particular request was covered in the general charge with

more precision and exactness, or the subject matter was so inapplicable to the facts in the case as not to require the jury to be instructed thereon. *Marshall v. Pig'n Whistle,* 102 Ga. App. 526 (116 S. E. 2d 671). Accordingly, there is no merit in either of these assignments of error, and the trial court did not err in refusing to so charge.

Special ground 8 will be considered along with the general grounds and the motion for judgment non obstante veredicto. As pointed out in division 1 of this opinion, the trial court, under the evidence in this case, would have been authorized to resolve, as a matter of law, that the insured Cofer's death did not result from commission of such an assault or felony as contemplated by this policy, but inasmuch as the trial court submitted that question to the jury for determination, certainly the evidence in the case, even conceding, without deciding, that the words "assault or felony" as used in this policy refer to and include such circumstances, as the defendant here contends led to the death of the insured, was most conflicting as to all material questions involved. Most assuredly the finding by the jury that the insurer was liable, under the terms of the policy, was authorized, and the evidence did not demand a finding in favor of the defendant.

As to special ground 8 the language used in paragraph 3 of the verdict specifically states, "We, the jury, do not award any damages to the plaintiff for bad faith on the part of the defendant" and thereby nullifies that part of the jury's verdict awarding $1500 as attorneys' fees. *Code Ann.* § 56-706. Accordingly, since attorneys' fees are not authorized, in the absence of the jury's finding bad faith on the part of the defendant, the judgment of the trial court overruling the defendant's motion for new trial will be affirmed, provided that that part of the jury's verdict awarding $1500 attorneys' fees is written off by the plaintiff within 10 days from the date the remittitur of this court is filed in the trial court, otherwise the judgment overruling the defendant's motion for new trial is reversed.

*Judgment affirmed on condition. Felton, C. J., and Bell, J., concur.*