39340. LOFTIN v. UNITED STATES FIRE INSURANCE COMPANY.

DECIDED APRIL 17, 1962—REHEARING DENIED JULY 11, 1962.

290

*John Hendrix Crutchfield, Merrell H. Collier,* for plaintiff in error.

*Hansell, Post, Gardner, Brandon & Dorsey, R. Emerson Gardner, Charles E. Watkins, Jr.,* contra.

HALL, Judge. Whether or not the plaintiff's petition presented an issue as to the defendant insurance company's obligation, under its insurance contract, to defend the claim and suits brought against the plaintiff is the only question before us. The contract provision in question is the following: "With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent, but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient." Similar or identical provisions are contained in most liability insurance policies. 7A Appleman, Insurance Law & Practice, 428, § 4682; 50 ALR2d 458, 461, 463.

In the usual case the facts alleged in the complaint brought against the insured and the true facts relating to coverage or non-coverage will be the same, so that there will be no dispute whether the insured's liability is covered by the policy and whether the insurer has a duty to defend. Dispute has often arisen, however, when a complaint against the insured shows false facts within the coverage of the policy, but the true facts, of which the insurer has knowledge from information furnished by the insured or from its own investigation, are not within coverage. The insurer must defend these suits for the reason that it has expressly obligated itself to do so by the insurance contract containing the common provision that the insurer will defend even groundless, false or fraudulent suits. McGettrick v. Fidelity &c. Co. of N. Y., 264 F2d 883, 886 (2d Cir. 1959); Bloom-Rosenblum-Kline Co. v. Union Indem. Co., 121 Ohio St. 220 (167 NE 884, 886); London Guarantee &c. Co. v. Shafer, 35 FSupp. 647, 649; Summer & Co. v. Phoenix Indem. Co., 32 NYS2d 2 (177 Misc. 887), affirmed 38 NYS2d 800 (265 App. Div. 911), appeal denied 41 NYS2d 180; Grand Union

Stores v. General Accident Fire &c. Corp., 295 NYS 654, 657 (163 Misc. 451), affirmed 298 NYS 187, 251; 7A Appleman, Op. cit. 448, § 4684.

Webster's New International Dictionary defines "groundless" as "without ground or foundation, wanting cause or reason for support." The groundless suit which the insurer undertakes to defend is a suit containing unsupportable allegations which on their face show coverage by the policy of the liability asserted against the insured for "damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person," or "because of injury or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance and use of the automobile." Whether or not the insured could be liable to the injured claimant under the true facts is not determinative of the groundlessness of the suit. For example, a suit is brought alleging injury and damage arising out of the use of the insured automobile. In truth the automobile involved was another automobile owned by the insured and not covered by the policy. This is a groundless suit because the allegations show coverage, even though the insured may, or may not, be personally liable under the true facts. Another example: The injured plaintiff alleges that the insured automobile was being driven by the wife of the insured, thus showing that the insured's liability is covered by the policy. In truth the automobile was being driven by an employee in the insured's business, under which facts the insured's liability is excluded. This is a groundless suit in contemplation of the insurance contract. "But a distinction must be drawn between groundless suits and actions which, even if successful would not be within the policy coverage." 7A Appleman, Op. cit. 448, § 4684. A claim based on *true* facts not within coverage is not groundless within the meaning of the policy, but simply one for which liability insurance is not afforded and which the insurer did not undertake to defend (though the insured may be liable.)

Much rarer than actions involving "groundless" suits are the cases in which the insured seeks recovery for the expenses of defending a suit on the ground that the known or ascertainable

facts giving rise to a claim were covered by the policy, but the complaint against the insured alleged untrue facts showing non-coverage. In this class of cases, when the insurance contract contains a provision like the one now in issue, the insurer must defend for the reasons hereinafter stated.

As to the defense of a suit alleging untrue facts showing non-coverage, when the known or ascertainable facts are within coverage, the contract is ambiguous as to the rights and duties between the insured and the insurer. In such a case, "the rights of the parties must be determined by fairly construing the insurance contract in such a way as to carry out its intended purpose." McGettrick v. Fidelity &c. Co. of N. Y., 264 F2d 883, 886, supra. The dubiousness of asserting the non-ambiguity of the contract provision in issue is well illustrated by the lack of agreement among the decisions throughout the country on this problem. 7A Appleman, Op. cit. 442-443, § 4683; 29A Am. Jur. 567, § 1454; 50 ALR2d 458, 497. Fairly construing the provision in question in light of the objects of the policy, we do not believe that the intent of the parties was to allow the insurer to ignore the true facts and to place the burden on the insured to enter into the defense of the suit to prove coverage already known to the insurer.

Liability insurance policies are usually prepared, as was the one in the present case, on a form contract which describes several coverages, each designated by a letter and descriptive words and each limited by a stated maximum amount of liability. Each individual policy is issued on the printed form for the coverages for which a premium is written in. Thus an individual policy will effect one or more coverages to the insured. The language "With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, . . ." is a part of the form of contract upon which the coverages to the individual insured are to be filled in. It must be considered in this light to mean, "If this policy is issued for, or affords in-

surance for, bodily injury liability or property damage liability, the company shall defend any suit alleging such injury, etc." Furthermore, an interpretation of the words, "such insurance as is afforded by this policy" to mean other than "insurance afforded according to the true facts" would be unreasonable.

We must assume that the insurer's undertaking to defend was intended to afford benefits to the insured. The undertaking to defend suits alleging facts within coverage, even though groundless, will benefit the insured only if he is sued for a sum in excess of the policy limits. Without such an express undertaking the insurer will defend suits, groundless or not, up to the limits of the policy to protect itself from an excessive or default judgment against the insured, which it would be liable to pay. But when untrue facts are alleged in the complaint showing an exclusion from coverage, the insurer need not defend in its own interest, as it would not be liable for a judgment based upon these untrue facts. Hence its undertaking to defend will be of definite benefit to the insured sued by such a complaint when the true facts are within coverage. We may reasonably presume that the undertaking to defend "with respect to the insurance afforded by this policy" was intended to give the insured this benefit—to defend suits when the policy affords insurance according to the true facts.

If the insurer intended otherwise, it could have made its intent clear and unmistakable by undertaking to defend "unless the complaint alleges facts which show the claim to be excluded from coverage," or by using other unambiguous language, for example: "The company shall defend claims and suits, groundless or otherwise, for which it may become liable only when the allegations thereof show injury covered by the policy and do not show the claim to be excluded by the policy."

The rule of thumb that has been enunciated in cases where the complaint against the insured alleges untrue facts showing the insured's liability or coverage by the policy—that the insurer's obligation to defend is to be determined by the allegations of the complaint (See 50 ALR2d 458, 463)—upholds the insurer's explicit undertaking to defend groundless, false or fraudulent suits. McGettrick v. Fidelity &c. Co. of N. Y., 264 F2d 883,

885, supra. The true rule is that the duty to defend is determined by the contract; and since the contract obligates the insurer to defend claims asserting liability under the policy; even if groundless, the allegations of the complaint are looked to to determine whether a liability covered by the policy is asserted. Therefore, to speak of the allegations of the complaint as the standard determining the duty to defend is confusing. In any event, that so-called "rule" has no proper application when the incident causing injury is covered by the policy, but the complaint against the insured falsely shows non-coverage. The rights of the parties in this situation must be found in the undertaking, "With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, . . ."

We cannot accept the contention that the allegations of the complaint alone determine the duty to defend in this class of cases.

The burden is on the insurer to show that a loss or claim comes within an exception to coverage. *Pilgrim Health &c. Ins. Co. v. Gormley,* 40 Ga. App. 30, 37 (148 SE 666); *Johnson v. Southern Life Ins. Co.,* 95 Ga. App. 625 (98 SE2d 382); *Union Central Life Ins. Co. v. Cofer,* 103 Ga. App. 355, 361 (119 SE2d 281). With respect to an exception to the duty to defend, this burden is not carried merely by proving that the allegations of the complaint allege facts excluding the claim from the policy. University Club v. American Mut. Liab. Ins. Co. of Boston, 124 Pa. Super. 480 (189 A 534, 536).

An insurance policy is a "contract of adhesion," prepared by legal draftsmen to be accepted by laymen. Patterson, The Delivery of a Life Insurance Policy, 33 Harv. L. Rev. 198, 222 (1919); See Schultz, The Special Nature of the Insurance Contract, 15 Law & Contemporary Prob. 376 (1950). Such a contract should be construed as reasonably understood by the insured. *Royal Indem. Co. v. McClatchey,* 101 Ga. App. 507, 510 (114 SE2d 394); *Fokes v. Interstate Life &c. Ins. Co.,* 59 Ga. App. 680 (2 SE2d 170); *American Cas. Co. v. Callaway,* 75 Ga.

App. 799, 802 (44 SE2d 400); *Life Ins. Co. of Va. v. Williams*, 48 Ga. App. 10, 13 (172 SE 101); *Atlas Assur. Co. v. Lies*, 70 Ga. App. 162, 165 (27 SE2d 791); *Penn Mutual Life Ins. Co. v. Childs*, 65 Ga. App. 468, 475 (16 SE2d 103); *Johnson v. Mutual Life Ins. Co.*, 154 Ga. 653 (115 SE 14). See 13 Appleman, Op. cit. 199, § 7481, 202, § 7482; 3 Corbin, Contracts, 592, § 599 (1951); 1954 Wis. L. Rev. 335. In considering the policy as a whole, laymen might well conclude that the company would defend any suit arising from an accidental injury in truth covered by the policy despite the manner in which the injured party presented his claim, as well as a suit falsely showing coverage.

The Pennsylvania court in Wilson v. Maryland Cas. Co., 377 Pa. 588 (105 A2d 304), cited in the dissenting opinion, infra, feared that a standard embracing the actual facts would force the company to defend on the word of the insured. The insurer, however, is in a position to decide whether or not to defend after a preliminary investigation of the facts, since it would not be liable for breach of the defense clause unless the insured could prove in a subsequent suit against it that the injured party had an enforceable claim within the policy and that the insurer knew or could have ascertained this. See 7A Appleman, Op. cit. 496, § 4690. Of course, if the insurer assumes the defense at the urging of the insured, and the plaintiff obtains a judgment on a theory not covered by the policy, the insurer should not be estopped to deny liability. To protect its rights fully, an insurer should obtain a non-waiver of rights agreement before undertaking a defense, or seek a declaratory judgment to determine its rights. See 7A Appleman, Op. cit. 515, §§ 4692-93; 29A Am. Jur. 564, § 1451; Note, 2 Stan. L. Rev. 383 (1950).

The defendant contends in effect that its obligation must depend uniformly on either the true facts or the allegations of the complaint, and that because the insurer is bound to defend a suit falsely alleging a claim covered by the policy, therefore it is excused from defending a suit alleging facts not covered, whether false or not. "The conclusion . . . is a non sequitur." McGettrick v. Fidelity &c. Co. of N. Y., 264 F2d 883, 886, supra. The duty ·to defend in the former instance is

established by the undertaking to defend suits "even if groundless, false, or fraudulent." McGettrick, supra; Bloom-Rosenblum-Kline Co. v. Union Indem. Co., 121 Ohio St. 220, supra; London Guarantee &c. Co. v. Shafer, 35 FSupp. 647, supra; Summer & Co. v. Phoenix Indem. Co., 32 NYS2d 2, supra. The duty to defend in the latter instance arises from the undertaking "with respect to such insurance as is afforded by this policy" to defend any suit alleging personal injury, etc. This undertaking says nothing about the rights and duties of the parties in the event there is a variation between the allegations of the complaint showing an exception to coverage and the true facts. "It would seem, therefore, that it must have reference to objective facts." McGettrick v. Fidelity &c. Co. of N. Y., 264 F2d 883, 885, supra. This policy cannot be construed to have intended other than that, when the insured in good faith complies with the terms of the policy requiring him to give notice to the insurer of claims and suits, the insurer undertakes to ascertain the true facts, with respect to an alleged exclusion from coverage and its duty to defend rests thereon. It would not be reasonable to say that it was the intention of the contracting parties, when the insured has given all notice and information required of him, that the assertions of a third party, a stranger to the contract, rather than the true facts, be allowed to determine the rights between the contracting parties, unless such an intention is clearly manifested by the terms of the contract, as in the undertaking to defend groundless suits.

We recognize that some courts in other jurisdictions have taken the opposite view (Wilson v. Maryland Cas. Co., 377 Pa. 588, supra; Thomas v. American Universal Ins. Co., (1952) 80 R.I. 129, 93 A2d 309; Lawrence v. Northwest Cas. Co., 50 Wash. 2d 282, 311 P2d 670, 50 ALR2d 458, 497, et seq.), but we hold that when the complaint against the insured alleges untrue facts placing the claim within an exception in the policy, but the true facts, known or ascertainable to insurer, are within coverage, the insurer is obligated to defend the suit. McGettrick v. Fidelity &c. Co. of N. Y., 264 F2d 883, supra; American Motorists Ins. Co. v. Southwestern Greyhound Lines, 283 F2d 648, 649; Hardware Mutual Cas. Co. v. Hilderbrandt, 119 F2d

291 (10th Cir. 1941); University Club v. American Mutual Liability Ins. Co. of Boston, 124 Pa. Super. 480, supra; Trinity Universal Ins. Co. v. R. J. Bethancourt (Tex. Civ. App.) 331 SW2d 943; Massachusetts Bonding & Ins. Co. v. Roessler (Tex. Civ. App.) 112 SW2d 275, 280, 281; State Ex rel. Inter-State Oil Co. v. Bland, 354 Mo. 622 (190 SW2d 227); see Marshall's U. S. Auto Supply v. Maryland Cas. Co., 354 Mo. 455 (189 SW2d 529, 531); Comunale v. Traders & Gen. Ins. Co., 50 Cal.2d 654 (328 P2d 198). Under the circumstances alleged in the plaintiff's petition, we must leave to the jury the determination of the defendant's duty to defend. *Liberty Mutual Ins. Co. v. Atlantic C. L. R. Co.*, 66 Ga. App. 826 (19 SE2d 377).

Our decision is not out of line with *Morgan v. New York Cas. Co.*, 54 Ga. App. 620 (188 SE 581). There the complaint against the insured showed that the injuries sued for did not result from the maintenance or use of the automobile truck insured; it showed on its face that they were not covered by the policy; the allegations of the complaint were not shown to be in conflict with the true facts.

In many cases, where the facts alleged in the complaint and the true facts are not in conflict, and where the complaint falsely alleges facts within coverage, but the insurer, with the duty to defend groundless suits, has knowledge of the true facts not within coverage, a correct result has been reached by holding that the allegations of the complaint determine the duty to defend. 50 ALR2d 458, 463. These cases are compatible with this decision.

The facts alleged by the plaintiff do not as a matter of law show that the defendant had no obligation to defend the alleged claim. The trial court erred in sustaining the defendant's general demurrer.

*Judgment reversed. All the Judges concur, except Felton, C. J., and Frankum, J., who dissent.*

FELTON, Chief Judge, and FRANKUM, Judge, dissenting. The policy provision as to duty to defend is plain and unambiguous. It is: "With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall (a) defend any suit against the

insured alleging *such* injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent. . ." (Emphasis added). Stated otherwise the above provision means that the insurance company agrees to defend any suit against the insured which shows upon its face a state of facts which brings the case within the coverage of the policy. The major premise is that the policy obligates the insurance company to defend any suit against the insured which *alleges facts showing policy coverage* and the liability of the company to pay the judgment if one should be obtained. As to meaning of "such injuries," see Marshall's U. S. Auto Supply v. Maryland Cas. Co., 354 Mo. 455, supra. Wilson v. Maryland Cas. Co., 377 Pa. 588 (105 A2d 304, 50 ALR2d 449).

The decisions are overwhelming to the effect that under such a policy the company is bound to defend if the allegations of the suit against the insured show policy coverage, and it makes no difference whether the company knows true facts which make the case groundless or fraudulent. The agreement to defend groundless or fraudulent actions where the suit shows coverage is superfluous as there would be a duty to defend even groundless suits if the suits showed coverage. If knowledge of the true facts does not relieve the insurance company of the duty to defend in such a case we cannot see why it would obligate the insurance company to defend where the suit did not show coverage. It did not agree to do so and the contract cannot be so construed. In McGettrick v. Fidelity &c. Co. of N. Y., 264 F2d 883, 886, it is stated that in cases alleging facts not covered by the policy there is no express agreement as to the duty to defend and that the rights of the parties must be determined by fairly construing the insurance contract in such a way as to carry out its intended purpose. This is the primary fallacious rationale in the majority opinion. The court stated in McGettrick v. Fidelity &c. Co. of N. Y.: "The conclusion that because the insurance company is bound to defend a suit alleging a claim covered by its policy, when in fact the incident giving rise to the claim was outside the scope of, or was expressly excluded from coverage, therefore the company is excused from defending a suit

alleging facts not covered by the policy, is a non sequitur. In the former case, the express agreement to defend is controlling. In the latter case, there is no express agreement as to the duty to defend, and the rights of the parties must be determined by fairly construing the insurance contract in such a way as to carry out its intended purpose." Such reasoning is utterly fallacious. If a contract stipulates that we will buy all of the Elberta peaches one produces, the obligation to buy other varieties is positively excluded. An agreement to defend suits *showing coverage* on their faces is *not an agreement to defend any other kind and is a contract that there is no duty to defend any other kind.* This is not an ambiguous contract nor one in which the intention of the parties is not clear from the express terms of the agreement. Why should knowledge of the truth be denied an insurance company as an escape in one kind of case and in another be forced on it against its express agreement? What has become of the old axiom, "expressio unius est exclusio alterius" (the expression of one thing is the exclusion of another)? See Black's Law Dictionary (4th ed.); 17 C.J.S. 730, Contracts, § 312; 3 ALR Dig. 720, Contracts, § 214; 12 Am. Jur. 765, Contracts, § 239; 3 Corbin on Contracts 276, Ch. 25; 2 Elliott on Contracts 815, § 1533, and cases cited therein. "The court will not, by inference, insert in a contract implied provisions with respect to a subject for which the contract has expressly provided." Broom's Legal Maxims (8th ed.), p. 510. "An obligation should not be implied in a written contract, unless, on considering the express terms reasonably, an implication necessarily arises that both parties must have intended that the obligation should exist. A court when called upon to imply an obligation which is not expressed must take care that it does not make the contract speak where it was intentionally silent, and above all that it does not make it speak entirely contrary to what, as it may be gathered from the whole terms and tenor of the contract, was the intention of the parties." Ibid., p. 518. An agreement to defend one kind of lawsuit cannot mean an obligation to defend two kinds. In Hardware Mut. Cas. Co. v. Hilderbrandt (1941, CA 10th Okla.) 119 F2d 291, the court stated a hypothetical case in an effort to show that it would be

unconscionable for an insurance company not to be held obligated to defend when the insurance company knew that the true facts would have shown coverage while the suit alleged facts showing no coverage. The following hypothetical case was stated (p. 299): "A owns two automobiles, a Ford and a Nash. The Ford is covered by the policy of the company but the Nash is not. A, while driving the Ford, negligently injures a third party and this party brings an action for damages alleging that A was driving the Nash. A notifies the company of the accident, furnishes it a copy of the petition, and explains to it that the car actually involved in the accident was the Ford and not the Nash. The company shuts its eyes to the information given to it by A as to the car actually involved in the accident, relies solely upon the allegations of the petition, makes no investigation of the facts and circumstances, denies liability and refuses to defend except upon a non-waiver which A declines to give. A undertakes the defense of the action with counsel of his own and negotiates a prudent settlement for a stipulated sum which he pays, and then makes demand upon the company to reimburse him which it declines to do, taking the position that there is no coverage as reflected by the allegations of the petition."

The above hypothetical case may have some relevancy under the policy terms involved in the Hilderbrandt case because there the insurance company did not confine its duty to defend to cases where policy coverage was alleged in the suit. There the policy provided (p. 293): "The Company . . . agrees . . . to defend in his name and behalf any suit against the assured seeking damages on account of such injury, even if such suit is groundless, false or fraudulent. . ." "Such injury" refers to the obligation to insure the insured against liability imposed by law for damages for death or bodily injuries accidentally sustained on the hotel premises by any person or persons other than employees of the insured. So the hypothetical asked by the court in the Hilderbrandt case is not relevant in this case (and it was not relevant in the McGettrick case) because in that case the insurance company did not agree exclusively to defend suits which alleged coverage, as the company did in the

McGettrick case and in the instant case. So we shall attempt to answer the hypothetical under the provisions of the instant policy as the majority seems to count on it in its decision. If the agreement to defend applies only to suits which alleged coverage the insurance company has a perfect right to stand on that contract so long as the allegations in the suit showed no coverage. The insurance company owed nobody a duty to have the allegations changed. It would have been obligated to defend if the allegations had been changed and it was notified in time to defend. The simple answer to this argument is first, that so long as the policy provision was not against public policy the insurance company could stand on its contractual rights; second, in such circumstances the insured in the exercise of sound judgment and ordinary prudence could advise the plaintiff of the mistake as to the particular automobile involved so that the suit could be amended to show coverage. The insured could do this without breaking faith with the insurance company in the matter of cooperation. If he stuck to the truth he could insist on the insurance company's defending the suit. He would not have to jeopardize his position of being without fault in the incident giving rise to the suit. He could still say that it was the covered automobile that was involved and still deny liability. When the insurance company refused to defend, the insured should look after his own interest and get his own attorney. We presume that he would have one who would have the integrity and character to advise him to endeavor to have the plaintiff know the truth and amend the suit. Any other conclusion would stultify the principles of justice and destroy the time-honored rights of parties to contract within the bounds of public policy and the faith in courts of justice which are the foundations of our faith in the doctrine of government by law as opposed to government by men in misguided efforts to circumvent the rules of law to do what seems to be justice in an individual case. It is simply impossible to make any reasonable application of the Hilderbrandt facts to those present in the McGettrick case.

Another unfounded statement in the McGettrick case is as follows: "The language of the policy says nothing about state-

ment of claims, or allegations in pleadings filed in lawsuits. . ."
The policy in that case provides: "As respects the insurance
afforded by other terms of this policy the company shall (a) de-
fend any suit against the insured *alleging* such injury . . .
and seeking damages on account thereof, even if such suit is
groundless." (Emphasis supplied). To quote the provision of
the policy is alone sufficient to refute the court's statement.

In *Liberty Mutual Ins. Co. v. Atlantic C. L. R. Co.*, 66 Ga.
App. 826 (19 SE2d 377), there was no agreement to defend
only suits showing policy coverage. In Mass. Bonding Ins. Co. v.
Roessler (Tex. Civ. App.) 112 SW2d 275, the policy pro-
vision was different from the instant one in that in that case the
insurance company promised "to defend . . . suits brought
on account of such claims, whether or not they are ground-
less. . ."

In Comunale v. Traders & Gen. Ins. Co., 50 Cal.2d 654, the
report of the case does not show that the allegations of the in-
jured party's petition were not within the coverage of the policy.

*Morgan v. New York Cas. Co.*, 54 Ga. App. 620, supra, is not
contrary to the position here taken.

In Marshall's U. S. Auto Supply v. Maryland Cas. Co., 354 Mo.
455, supra, the allegations, rather than the true facts, controlled
the duty to defend.

In Wilson v. Maryland Cas. Co., 377 Pa. 588, supra, the court
construed the exact provision here involved to mean that the
allegations controlled and not the true facts.

We construe the ruling in University Club v. American Mu-
tual Life Ins. Co. of Boston, 124 Pa. Super. 480, supra, to mean
that the suit alleged coverage under the policy.

*The duty of defending groundless suits does not extend obli-
gation to suits outside coverage.* Wilson v. Maryland Cas. Co.,
377 Pa. 588, supra; Socony-Vacuum Oil Co. v. Continental Cas.
Co., 144 Ohio St. 382 (59 NE2d 199) (dictum); Gilmore v.
Royal Indem. Co., 31 Ohio Ops. 287; Soper v. Fidelity & Cas. Co.,
101 NYS2d 581 (198 Misc. 1117); Ocean Accident &c. Corp. v.
Washington Brick &c. Co., 148 Va. 829 (139 SE 513); Boyle v.
National Cas. Co., 84 A2d 614, 616. See also cases cited in

Marshall's U. S. Auto Supply v. Maryland Cas. Co., 354 Mo. 455, supra.

The second of the principal fallacies in the majority opinion is the erroneous conception of what is a groundless suit. In our opinion a groundless suit is one that affects the *liability* of a defendant and not one which merely alleges some false facts which apply to the *coverage* of an insurance policy. False facts pertaining to coverage might not cut any figure at all insofar as the liability of a defendant to a plaintiff is concerned. For example, a defendant may have injured a plaintiff by the negligent operation of a Ford automobile which was not covered by an insurance policy, whereas the facts in the case may have shown that the defendant injured the plaintiff in the negligent operation of a Chevrolet automobile which was not covered by an insurance policy. The divergent facts in the case would not affect the liability of the defendant for negligence. A groundless suit is one which states false facts upon which the liability of a defendant is based. Whether the facts show coverage or not has nothing to do with the liability of the defendant. The majority opinion in its beginning makes the following statement: "The insurer must defend these suits for the reason that it has expressly obligated itself to do so by the insurance contract containing the common provision that the insurer will defend even groundless, false or fraudulent suits," and the opinion cites five cases to support its statement. We do not agree that any one of the cases cited in support of the statement actually supports it. The first citation does not support it for the reason that the duty of the insurance company to defend is based on an erroneous interpretation of the provisions of the policy and is not based on the agreement to defend groundless suits. The cases cited either do *not have the same provision involved in the instant policy* or they are cases which *allege coverage*. The majority gives as an example of a groundless suit one which alleges injury and damages arising out of the use of an insured automobile, when in truth the automobile involved was another automobile owned by the insured and not covered by the policy. This is not a groundless suit under the true meaning of the words "groundless suit." Another example given by the ma-

jority is a suit alleging that the insured automobile was being driven by the wife of the insured, which would be covered by the policy, when in truth, the automobile was being driven by an employee in the insured's business, under which facts the insured's liability is excluded. This is not a groundless suit because the defendant in the case would be liable whether the incident was covered by the insurance or not.

The following cases are in accord with the above opinion, that where there is a conflict between the allegations in a suit against the insured and the true facts as known to or ascertainable by the insurer the allegations in the complaint determine the insurer's duty to defend: Equity Mut. Ins. Co. v. Southern Ice Co., 232 Ark. 41 (334 SW2d 688) ; Lamb v. Belt Cas. Co. (1935) 3 Cal. App. 2d 624 (40 P2d 311) ; Remmer v. Glens Falls Indem. Co. (1956) 140 Cal. App. 2d 84 (295 P2d 19) (dictum) ; Boyle v. National Cas. Co., 84 A2d 614, supra; Fesenden School, Inc. v. American Mut. Liability Ins. Co. (1935), 289 Mass. 124 (193 NE 558) ; U. S. Fidelity &c. Co. v. Yazoo Cooperage Co. (1930) 157 Miss. 27 (127 S 579) ; Southern Farm Bureau Cas. Ins. Co. v. Logan, 238 Miss. 580 (119 S2d 268) ; Goldberg v. Lumber Mut. Cas. Ins. Co. (1947) 297 NY 148, (77 NE2d 131) ; Lee v. Aetna Cas. &c. Co. (1949, CA2d NY) 178 F2d 750; Bloom-Rosenblum-Kline Co. v. Union Indem. Co. (1929) 121 Ohio St. 220, supra; Gilmore v. Royal Indem. Co., 31 Ohio Ops. 287, supra; Thomas v. American Universal Ins. Co. (1952) 80 RI 129 (93 A2d 309) ; Heyward v. American Cas. Co. (1955 DC SC) 129 FSupp. 4; General Ins. Corp. v. Harris (Tex. Civ. App.) 327 SW2d 651; Albuquerque Gravel Products Co. v. American Employers Ins. Co. (CA 10 NM) 282 F2d 218; Lawrence v. Northwest Cas. Co., 50 Wash.2d 282, supra; Wilson v. Maryland Cas. Co., 377 Pa. 588, supra; Socony-Vacuum Oil Co. v. Continental Cas. Co., 144 Ohio St. 382, supra; Soper v. Fidelity & Cas. Co., 101 NYS2d 581, supra; Ocean Acci. &c. Corp. v. Washington Brick &c. Co., 148 Va. 829 supra; Marshall's U. S. Auto Supply v. Maryland Cas. Co., 354 Mo. 455, supra. See also, 7A Appleman, Insurance Law and Practice, § 4683.

We think the provision in the insurance policy is clearly un-

ambiguous and easily understandable in the words used. We do not think that this court, or any other court has any right to alter the plain and unambiguous provision of a contract so long as the same is not violative of the public policy of this State. We think that the judgment of the trial judge should be affirmed.