DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LENMAR REALTY, LLC,**
Appellant,

v.

**SUN ELECTRIC WORKS, INC.,** a Florida corporation,
and **RELIABLE POWER SYSTEMS, INC.,**
Appellees.

Nos. 4D19-3467, 4D19-3468 and 4D19-3605

[April 14, 2021]

Consolidated appeals from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Edward L. Artau, Judge; L.T. Case Nos. 50-2017-CA-009665-XXXX-MB and 50-2017-CA-010348-XXXX-MB.

Ronald E. D'Anna of D'Anna Legal, PLLC, Boca Raton, for appellant.

Jane Kreusler-Walsh, Rebecca Mercier Vargas, and Stephanie L. Serafin of Kreusler-Walsh, Vargas & Serafin, P.A., West Palm Beach, and Edward F. Holodak of Edward F. Holodak, P.A., Plantation, for appellees.

GROSS, J.

Lenmar Realty, LLC, appeals from an amended final judgment entered in two consolidated lower-court cases involving a commercial dispute with its tenant, Sun Electric Works, Inc., and Reliable Power Systems, Inc., which also occupied the leased premises. We affirm the final judgment in all respects but one—we reverse that portion of the judgment denying Lenmar's motion to obtain rental monies that Sun Electric deposited in the court registry during the pendency of the litigation.[1]

### *The Lease*

Sun Electric was the tenant under a 2012 lease for two units of a commercial warehouse in Boca Raton. The lease prohibited assignment or subletting without the landlord's written consent.

---

[1] We also affirm without comment in Lenmar's appeal of the post-judgment order in case number 19-3605.

The original lease term was five years and three months, with an option to renew for three years. Lenmar became the landlord when it purchased the warehouse in 2015. Sun Electric submitted a notice of lease extension in 2016.

The two units were originally set up as three bays, which could have been leased as three separate units. The front of the space had three different names over the bays, two of which are relevant to this appeal: Sun Electric and Reliable Power Systems. Sun Electric provides garden-variety electrical services, while Reliable Power Systems supplies standby generators and installs liquid petroleum tanks and lines. Before the litigation began, rent checks to Lenmar listed both "Reliable Power Systems & Electrical Services" and "Sun Electric Works, Inc."

### The Dispute

The dispute arose in July 2017. Lenmar's property manager visited the site and discovered various issues at the property that he attributed to Reliable Power Systems.

On July 14, 2017, Lenmar's attorney sent a certified letter to Reliable Power Systems, advising it that: (1) Lenmar objected to its unauthorized occupancy of the leased units; (2) Lenmar considered the occupancy a tenancy at will; and (3) if it wished to remain on the premises, it would be required to sign a lease at the market rate, perform certain repairs, and take other corrective actions.

Sun Electric's attorney responded to Lenmar's letter, disputing the allegations. Sun Electric's attorney asserted that Reliable Power Systems, Inc., was a corporation with no business operations, that all company operations were through Sun Electric, and that Reliable Power Systems was a fictitious name.

When Reliable Power Systems failed to comply with Lenmar's demands, Lenmar notified Reliable of its intent to terminate the alleged tenancy at will, effective August 31, 2017.

### The Sun Electric v. Lenmar Lawsuit

Before the August 31 deadline expired, Sun Electric filed a three-count lawsuit against Lenmar. In Sun Electric's amended complaint, it asserted counts for breach of contract, declaratory judgment, and constructive eviction.

Lenmar answered and raised various affirmative defenses, including that (1) Sun Electric permitted an unauthorized tenant, Reliable Power Systems, to occupy the leased premises, and (2) Sun Electric had failed to pay rent into the court registry, entitling Lenmar to immediate possession of the leased premises. Lenmar's answer sought "the entry of a judgment against [Sun Electric] ordering [Sun Electric] to go hence without day, and an award of attorney's fees and allowable costs."

### *The Lenmar v. Reliable Power Systems Lawsuit*

Reliable Power Systems failed to vacate the leased premises by the August 31, 2017 deadline. Shortly thereafter, Lenmar sued Reliable Power Systems for non-residential tenant eviction and damages. Lenmar's request for damages included double rent for each month Reliable Power Systems held over in the leased premises.[2]

Lenmar's lawsuit was transferred to the same division as Sun Electric's lawsuit and the cases were consolidated for all purposes.

### *Sun Electric's Rent Deposits into the Court Registry*

Lenmar began to reject Sun Electric's rent checks because the checks also listed Reliable Power Systems. Sun Electric moved to deposit rent in the court registry. The trial court granted the motion by agreed order, retroactive to September 2017.

### *Lenmar's Motions to Disburse Rent*

Sun Electric and Reliable Power Systems vacated the leased premises on July 6, 2018.

Lenmar later moved to disburse the rents deposited into the court registry and to compel the payment of the remaining rent balance due. The trial court denied the motion without prejudice to Lenmar's right to address the issue at trial. Lenmar filed a renewed motion to disperse rents deposited into the court registry.

---

[2] Although we do not decide this issue, we note that Lenmar's approach was not the only way to address Reliable Power Systems' possession of the premises. For example, "[i]t is a well-settled principle of landlord-tenant law that a sublease rises and falls with the master lease, and that a sublessee can take no greater rights in demised property than its sublessor." *Thal v. S.G.D. Corp.*, 625 So. 2d 852, 853 (Fla. 3d DCA 1993). Lenmar might have included Sun Electric as a party in the eviction lawsuit for violation of the subletting clause of the lease.

### The Trial

The case proceeded to a non-jury trial.

One of the main issues in contention was whether Reliable Power Systems was a fictitious name for Sun Electric or instead was a separate corporation. There was testimony that Sun Electric vacated the premises on July 6, 2018, and the premises remained vacant until January 31, 2019.

### The Original Final Judgment

The trial court entered a final judgment ruling against Sun Electric on its claims against Lenmar for breach of contract, declaratory relief, and constructive eviction. The court found that Reliable Power Systems was a separate legal entity with a separate business plan from that of Sun Electric. The court ruled that Sun Electric breached the lease by permitting Reliable Power Systems—an unauthorized occupant—to locate on the leased premises without Lenmar's consent. The court found that Sun Electric failed to prove that it was constructively evicted or that Lenmar anticipatorily breached the lease.

The trial court ruled for Reliable Power Systems in Lenmar's action for eviction and damages. It found that the eviction claim was moot since Reliable had already vacated the premises. As to the damages claim, the court reasoned that there was no lease between Lenmar and Reliable Power Systems, so there was no contractual basis to hold Reliable responsible. The court rejected Lenmar's claim that Reliable Power Systems occupied the property under a tenancy at will, since Sun Electric had a written lease for the units.

Significantly for this appeal, the trial court denied Lenmar's claim for the rent deposited in the court registry because there was no counterclaim or "other plead[ed] affirmative relief against Sun Electric." The court ordered that the deposited rental funds be returned to Sun Electric.[3]

### Lenmar Was Entitled to Obtain the Rental Monies from the Court Registry by Filing a Motion, Without Filing a Pleading Containing a Cause of Action Directed at Obtaining the Funds

---

[3] The court entered an amended final judgment that made some changes but preserved the rulings discussed in this opinion.

The trial court erroneously concluded that Lenmar was not entitled to the release of rents deposited into the court registry because it did not assert such a claim in a pleading, but instead pursued the claim by pre- and post-trial motions. Lenmar was entitled to assert a claim by motion because entitlement to the rent deposits in the court registry was ancillary to the asserted claims for relief.

Under the Rules of Civil Procedure, a pleading is not the exclusive way of seeking relief from the court. A litigant may also bring a motion setting "forth the relief or order sought." Fla. R. Civ. P. 1.100(b).

The consolidated case involved a claim for possession of real property. In such cases, there are often competing claims regarding rent that accrue during the pendency of an action for possession. Chapter 83, Florida Statutes (2018), entitled "Landlord and Tenant," has established procedures calling for the deposit of rent, as it accrues, during the pendency of an action for possession into the registry of the court. § 83.232, Fla. Stat. (2018) (commercial tenancies); § 83.60(2), Fla. Stat. (2018) (residential tenancies).

Section 83.232, Florida Statutes, governs rent paid into the registry of the court in actions for possession involving nonresidential tenancies:

> (1) ***In an action by the landlord which includes a claim for possession of real property*, *the tenant shall pay into the court registry*** the amount alleged in the complaint as unpaid, or if such amount is contested, such amount as is determined by the court, and ***any rent accruing during the pendency of the action***, when due, unless the tenant has interposed the defense of payment or satisfaction of the rent in the amount the complaint alleges as unpaid. . . . ***If the landlord is in actual danger of loss of the premises or other hardship resulting from the loss of rental income from the premises, the landlord may apply to the court for disbursement of all or part of the funds so held in the court registry***.

§ 83.232(1), Fla. Stat. (2018) (emphasis added).

"Section 83.232 is designed to protect a commercial landlord from irreparable harm where a tenant holds over during eviction proceedings without paying rent." *Famsun Invest, LLC v. Therault*, 95 So. 3d 961, 963 (Fla. 4th DCA 2012). The statute contains "no express limitation that the claim for possession be based upon unpaid rent." *Misha Enters. v. GAR*

*Enters., LLC*, 117 So. 3d 850, 853 (Fla. 4th DCA 2013). Nor does the statute require a litigant to file a claim for affirmative relief to obtain the proceeds from the court registry.

Section 83.232(1) states that a landlord "may apply to the court" for disbursement of funds in the court registry. This language contemplates that a landlord may assert a claim for disbursement of funds by motion rather than by a pleading.

Requiring the assertion of a claim in a pleading to obtain rental funds in the court registry is contrary to the expedited procedure applicable in landlord-tenant actions. Actions seeking removal of a commercial tenant are subject to "the summary procedure provided" in section 51.011, Florida Statutes (2018). § 83.21, Fla. Stat. (2018). Section 51.011 provides for limited pleadings with short response times. The requirement of a separate pleading after a rental deposit order would necessarily slow down and complicate what is supposed to be an expedited, simple process. The point of a rental deposit statute is to secure rental monies in a neutral place so that they can be quickly allocated and distributed by the court. A landlord may apply by motion for disbursement of rental funds under rule 1.100(b) in connection with a final disposition of the case.

Here, there is no dispute that Sun Electric occupied the premises under a lease until July 6, 2018. Until that time, Sun Electric paid into the court registry the "rent accruing during the pendency of the action." The trial court ordered return of the rental payments to Sun Electric because Lenmar had not pled for any affirmative relief against Sun Electric. This order added insult to injury because Sun Electric had not pleaded for the relief of any rebate or refund of the rent monies paid. Once the trial court entered a final judgment in favor of Lenmar on Sun Electric's causes of action, Sun Electric had no possible claim to the money in the court registry.

For these reasons, we affirm in part, reverse in part and remand to the circuit court for release of the funds in the court registry to Lenmar, or for such other relief as may be proper.

*Affirmed in part, reversed in part, and remanded.*

LEVINE, C.J., and KLINGENSMITH, J., concur.

\*        \*        \*

**Not final until disposition of timely filed motion for rehearing.**